UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

WENDELLA BATTLE,                                                 Plaintiff,

v.                                                   Civil Action No. 3:17-cv-500-DJH-RSE

WALTER PARR,                                                 Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Wendella Battle was arrested by Walter Parr—a security guard at the Cash Saver grocery store in Louisville, Kentucky—for criminal trespass in the third degree on September 28, 2016. (Docket No. 29-1, PageID # 131) According to Parr, he saw Battle in front of the store on that date, despite two prior warnings that she was banned from the grocery store and the property. (*Id.*, PageID # 129-131) Battle maintains, however, that she did not know she was banned until she was arrested. (D.N. 32-1, PageID # 183) Further, Battle states that she was standing in front of a neighboring store and not Cash Saver when she was arrested. (*Id.*, PageID # 185) Battle sued Parr for malicious prosecution and false arrest under both state and federal law. (D.N. 1, PageID # 5-8) Parr moved to dismiss, and the Court granted the motion as to Battle's malicious-prosecution claims. (D.N. 15, PageID # 80) Parr now seeks summary judgment as to the remaining claims against him, arguing that he is entitled to qualified immunity. (D.N. 29, PageID # 161) Because the question of qualified immunity turns upon disputed facts, the motion for summary judgment will be denied.

**I.**

On August 28, 2016, Battle was shopping at a grocery store then known as First Choice Market. (D.N. 29-1, PageID # 129, 133) While in the checkout line, Battle began cursing during

1

a phone conversation. (D.N. 32-1, PageID # 181) Parr—a security officer at First Choice—approached Battle and informed her that she was not allowed to use such language in the store. (*Id.*) Parr was also employed at that time as a corrections officer with Louisville Metro Department of Corrections. (D.N. 32-2, PageID # 217) According to Battle, she told Parr that "it was [her] phone" and that she "was leaving the store." (D.N. 32-1, PageID # 182) Battle said that Parr followed her out of the store, "all the way across the parking lot." (*Id.*) Parr said that during their conversation, he informed Battle that she was banned from the store "and off the property." (D.N. 29-1, PageID # 134)

In early September 2016, First Choice Market closed and Cash Saver opened a new store in the same location.[1] (D.N. 29, PageID # 154; D.N. 32, PageID # 165) Parr testified that he did not know if Battle returned to the store before that time but that "[i]f she did, [he] wasn't there." (D.N. 32-2, PageID # 221) Parr said that he next saw Battle on September 16, 2016—after the name change. (*Id.*, PageID # 231-32) Parr stated that saw Battle enter the store and told her, "Don't you remember you were barred out of the store and off the property?" to which Battle responded, "Yes." (D.N. 29-1, PageID # 129) Parr said that he then told Battle she needed to leave and escorted her to the door. (*Id.*, PageID # 129-30) Battle testified, however, that she had no interaction with Parr during her visit to the new store. (D.N. 32-1, PageID # 182) Battle testified that Parr just watched her "through the store" and "never said anything to [her]." (*Id.*)

According to Parr, the next time he saw Battle was when she was standing in front of the grocery store on September 28, 2016. (*Id.*, PageID # 131) Parr said that he arrived at Cash Saver,

---

[1] The significance of the name change is unclear from the record currently before the Court—i.e., the record does not establish whether this was a mere rebranding or represented a change in ownership, either of which may affect the facts in dispute. However, the Court need not address the issue at this time because, as will be explained below, there is a dispute as to whether Battle was actually banned from the original store.

2

clocked in, and went back outside and identified himself to Battle as an LMDC officer. (*Id.*) He then told Battle that he was placing her under arrest. (*Id.*) Parr stated that Battle began "walking off toward Metro PCS" at that point. (*Id.*) Parr radioed police officers for assistance, and two police units arrived two minutes later. (*Id.*) Parr said that Battle "kept going on and going on," saying "I wasn't on the property." (*Id.*) According to Parr, he responded, "Hey, I'm tired of dealing with you. I've given you two chances and you keep coming back with this nonsense." (*Id.*) Parr then "placed [Battle] under arrest for criminal trespassing in the third." (*Id.*) According to Battle, however, she was standing in front of Metro PCS when Parr arrived on September 28. (D.N. 32-1, PageID # 183) Battle said that she refrained from entering the store with her family in order "[t]o prevent any other confrontation" between herself and Parr. (*Id.*, PageID # 184) Battle explained that "there was going to be a confrontation because [she] [had] contacted [Parr's] [LMDC] supervisor" to file a complaint about Parr following her out of the grocery store. (*Id.*)

According to Battle, Parr approached her upon exiting the grocery store and asked her, "What do you want me to do?" (*Id.*, PageID # 186) Battle responded, "I don't know. Whatever you feel like you need to do. I'm not doing anything." (*Id.*) Battle said that Parr then informed her she was trespassing, to which she responded, "No, I'm not." (*Id.*) As Battle turned to walk away, Parr grabbed her arm and told her that she could not leave and that she was under arrest for trespassing. (*Id.*, PageID # 186-87) Battle testified that she did not know she was banned form the grocery store before she was arrested. (*Id.*, PageID # 188)

Battle filed her complaint in this Court on August 17, 2017, asserting claims of false arrest and malicious prosecution under state and federal law against Parr, and a claim for respondeat

3

superior against Buehler, LLC, which owned and operated Cash Saver.[2] (D.N. 1, PageID # 5-8) On February 6, 2018, Parr filed a motion to dismiss for failure to state a claim. (D.N. 10) The Court granted Parr's motion as to Battle's malicious-prosecution claims under state and federal law. (D.N. 15, PageID # 80) Parr now seeks summary judgment as to the rest of Battle's claims against him. (D.N. 29)

**II.**

Summary judgment is required when the moving party shows, using evidence in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* 56(c)(1). For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Loyd v. Saint Joseph Mercy Oakland*, 766 F.3d 580, 588 (6th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, the Court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3); *see Shreve v. Franklin Cty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). If the nonmoving party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)," the fact may be treated as undisputed. Fed. R. Civ. P. 56(e)(2)-(3). To survive a motion for summary judgment, the nonmoving party must establish a genuine issue of material fact with respect to each element of each of his claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (noting that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"). Parr argues that he is entitled to qualified immunity from Battle's remaining claims, and therefore is entitled to judgment as a matter of law. (D.N. 29, PageID # 152-161)

---

[2] On November 15, 2019, Buehler filed a proposed agreed order of dismissal. (D.N. 41) The Court dismissed Battle's claims against Buehler with prejudice and terminated Buehler as a defendant in the record of this matter on November 20, 2019. (D.N. 42)

4

A.  **Qualified Immunity**

   1. **Fourth Amendment False Arrest (42 US.C. § 1983)**

Battle asserts a claim of false arrest against Parr under 42 U.S.C. § 1983. (D.N. 1, PageID # 5-6) "Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals not just against liability but against the suit itself." *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014). "The doctrine of [qualified] immunity shields government officials performing discretionary functions from civil liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Phillips v. Roane Cty., Tenn.*, 534 F.3d 531, 538-39 (6th Cir. 2008)). "To determine whether a government official is entitled to qualified immunity, [courts] make two inquiries: 'First, viewing the facts in the light most favorable to plaintiff, has the plaintiff shown that a constitutional violation has occurred? Second, was the right clearly established at the time of the violation?'" *Id.* at 609-10 (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 247 (6th Cir. 2010)). "The plaintiff bears the burden to show that the defendant is not entitled to qualified immunity." *Id.* at 610 (citing *Untalan v. City of Lorain*, 430 F.3d 312, 314 (6th Cir. 2005)).

"Whether to grant qualified immunity is normally a question of law for the court, but when this question turns upon what version of contested facts one accepts, 'the jury not the judge must determine liability.'" *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 774 (W.D. Ky. 2003) (quoting *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000)). "This is not a rule specific to qualified immunity; it is simply an application of the more general rule that a 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to

determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249). Although Parr maintains that qualified immunity is a question of law for the Court to decide, the Court finds that the question of qualified immunity must be submitted to the jury as the decision is "completely dependent upon which view of the [disputed] facts is accepted." *Baynes*, 799 F.3d at 610 (quoting *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007)).

### a. Question of Fact

As explained above, Battle must show that a constitutional violation has occurred in order to succeed on her § 1983 claim. *See Baynes*, 799 F.3d at 609-10. In other words, Battle must show that Parr's decision to arrest her for trespass was a violation of a constitutional right. The constitutional right at issue here is Battle's Fourth Amendment right to be free from false arrest.

"The burden is on a plaintiff bringing a constitutional claim for false arrest under the Fourth Amendment to show probable cause for the arrest was lacking." *Neterkeht v. Longworth*, No. 1:12-cv-695, 2013 U.S. Dist. LEXIS 99788, at *32 (S.D. Ohio July 17, 2013) (citing *Provience v. City of Detroit*, 529 F. App'x 661, 666 (6th Cir. 2013)). But "a lack of probable cause is not necessarily fatal to an officer's defense against civil liability for false arrest. Rather, an officer is entitled to qualified immunity under § 1983 'if he or she could reasonably (even erroneously) have believed that the arrest was lawful, in light of clearly established law and the information possessed at the time by the arresting agent.'" *Green v. Throckmorton*, 681 F.3d 853, 865 (6th Cir. 2012) (quoting *Parsons v. City of Pontiac*, 533 F.3d 492, 501 (6th Cir. 2008)).

The question here is therefore whether Parr had probable cause to arrest Battle for trespassing or whether Parr could reasonably have believed that the arrest was lawful. *Id.* Parr admitted in his deposition testimony that, generally speaking, he could not arrest someone for

6

trespassing unless he had told them they were banned from the store. (D.N. 29-1, PageID # 132) Moreover, Parr admitted that it would have mattered to him if Battle had been standing in front of Metro PCS rather than the grocery store. (*Id.*) In his deposition testimony, Parr said:

> Q: Did it matter to you if [Battle] was coming to Metro PCS?
> A: Yeah, it would, but she wasn't in Metro PCS. She was in front of the store where she shouldn't have been.
> Q: Okay, so if she was standing in front of Metro PCS, you wouldn't have arrested her?
> A: I wouldn't care.

(*Id.*) Thus, the "reasonableness" of Parr's actions turns on two critical factual issues in dispute: (a) whether Parr actually told Battle she was banned from the store property, and (b) whether Battle was standing in front of Cash Saver when she was arrested for trespassing. *Green*, 681 F.3d at 865. "If the answer to those two questions is an unequivocal 'yes' even under [Battle's] version of events, then Officer [Parr] is entitled to qualified immunity." *Jefferson v. Lewis*, 594 F.3d 454, 462 (6th Cir. 2010). But absent an "unequivocal yes," the question of qualified immunity must be submitted to the jury. *Id.*; *see also Robertson v. Johnson Cnty.*, 896 F. Supp. 673, 689 (E.D. Ky. 1995) (finding that "summary judgment is not appropriate if there are factual disputes involving an issue on which the question of immunity turns, such that it cannot be determined before trial whether the defendants did acts that violated clearly established rights" (internal quotations and citations omitted)). As explained below, whether Parr violated Battle's clearly established rights is entirely dependent upon which view of the facts is accepted.

### i. The Ban

Under Battle's version of events, she was not informed by Parr at any point prior to her arrest that she was banned from the property. (D.N. 32-1, PageID # 188) Battle testified that during her first interaction with Parr on August 28, he followed her across the parking lot but never told her that she was banned from the store. (*Id.*, PageID # 183) Battle further stated that when

she returned to the store after it became Cash Saver, she did her shopping, checked out, and left without interacting with Parr. (*Id.*, PageID # 182-83) Battle said that Parr just watched her as she went through the store. (*Id.*, PageID # 182)

Parr, however, testified that he informed Battle on August 28 that she was banned from the store (D.N. 29-1, PageID # 129), and that he reminded her of the ban when she re-entered the store in early September 2016 (*id.*, PageID # 130). Parr argues that Battle cannot deny knowledge of the ban, as "her [c]omplaint specifically acknowledges that she was advised by Officer Parr on two prior occasions of her ban from the property where she was arrested." (D.N. 34, PageID # 238) But "Rule 56 requires a focus on the evidence; a complaint is not evidence." *Anderson v. Lawless*, No. 1:18-cv-380, 2020 U.S. Dist. LEXIS 24308, at *40-*41 (S.D. Ohio Feb. 12, 2020). "The fact that the record as developed (including but not limited to Plaintiff's own testimony) differs slightly from the allegations in the complaint may provide grounds for cross-examination but does not provide grounds for granting summary judgment." *Id.* at *41. Thus, the question of whether Battle had been banned from Cash Saver is "completely dependent upon which view of the disputed facts is accepted." *Baynes*, 799 F.3d at 610.

### ii. Metro PCS

Similarly, in Battle's version of events, she was not standing in front of the Cash Saver grocery store at the time Parr says she was trespassing. According to Battle's deposition testimony, she was standing in front of the doors of the neighboring Metro PCS store when she saw Parr on September 28, 2016. (D.N. 32-1, PageID # 185) Battle said that the conversation in which Parr told her she was trespassing occurred in front of Metro PCS. (*Id.*, PageID # 186) Parr maintains, however, that when he arrived at Cash Saver that day, he saw Battle standing in front of the grocery store. (D.N. 29-1, PageID # 131) Parr stated that only after he told Battle he was arresting her for

trespassing did she start "walking off towards Metro PCS." (*Id.*) Thus, the question of where Battle was standing at the time she was accused of trespassing is also entirely dependent on which view of the facts is accepted.[3] *Baynes*, 799 F.3d at 610. Accordingly, the jury must find the facts to determine whether Parr is entitled to qualified immunity on Battle's Fourth Amendment claim. *See Jefferson*, 594 F.3d at 462-63 (finding that qualified immunity was a question of fact for the jury in light of competing inferences that could be drawn from the facts at issue and their effect on the question of whether an officer's actions were objectively unreasonable).

### 2. False Imprisonment/Arrest (Kentucky Common Law)

Battle also brings a claim for "false imprisonment/arrest" under Kentucky common law. (D.N. 1, PageID # 7-8) "Kentucky law defines false imprisonment as 'any deprivation of the liberty of one person by another or detention for however short a time without such person's consent and against his will, whether done by actual violence, threats, or otherwise.'" *Scheffler v. Lee*, 752 F. App'x 239, 248-49 (6th Cir. 2018) (quoting *Banks v. Fritsch*, 39 S.W.3d 474, 479 (Ky. Ct. App. 2001)). "Kentucky law also recognizes a qualified immunity defense for public officials, commonly referred to as 'qualified official immunity.'" *Id.* at 244. "Officials are entitled to qualified immunity for 'good faith judgment calls made in a legally uncertain environment.'" *Id.* (quoting *Yanero v. Davis*, 65 S.W. 3d 510, 522 (Ky. 2001)). "To defeat qualified official immunity, the plaintiff must establish that the defendant's 'act was not performed in good faith.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 523).

---

[3] Parr maintains that it does not matter where Battle was actually standing, as he believed that the Cash Saver property included "[t]he whole parking lot for that store and the area from the end of the building to the other end of the building." (D.N. 29-1, PageID # 130) As noted previously, however, Parr admitted that he would not have arrested Battle for trespassing if she was standing in front of the Metro PCS store. (*Id.*, PageID # 132) Thus, Parr cannot now argue that Battle's location is irrelevant.

To show that a peace officer acted in bad faith when making an on-the spot judgment call, the plaintiff must

> demonstrate that the officer "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate" the complainant's rights or that the officer "took the action with the malicious intention to cause a deprivation of constitutional rights or other injury."

*Haugh v. City of Louisville*, 242 S.W.3d 683, 686 (Ky. Ct. App. 2007) (emphases and ellipses omitted) (quoting *Yanero*, 65 S.W.3d at 523). "Thus, the qualified official immunity analysis under Kentucky law 'tracks the inquiry for objective reasonableness and qualified immunity' under federal law.'" *Scheffler*, 752 F. App'x at 244 (quoting *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 425 (6th Cir. 2017)). As explained above, there are disputed issues of fact as to whether there was probable cause to arrest Battle and whether Parr's actions were reasonable under federal law. Accordingly, the jury, not the Court, must also determine the facts upon which qualified immunity for Battle's state-law claim would turn. *Fultz*, 261 F. Supp. 2d at 774.

### III.

As outlined above, the remaining factual disputes prohibit the Court from finding that Parr is entitled to qualified immunity. The Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Parr's motion for summary judgment (D.N. 29) is **DENIED**.

March 19, 2020

**David J. Hale, Judge**
**United States District Court**